IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | Case No.: 3:22-cr-111 |
| | ) | |
| Thomas William Walker Sayward, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court are four motions by Defendant Thomas William Walker Sayward. The first is a motion to dismiss superseding indictment (Doc. No. 55) and a related motion for an evidentiary hearing. Doc. No. 56. The United States opposes the motions (Doc. No. 65). The third and fourth motions are, respectively, a motion for bill of particulars (Doc. No. 54) and a renewed motion of the same. Doc. No. 69. Sayward filed his first motion for bill of particulars on October 19, 2022 (Doc. No. 54), and the United States responded. Doc. Nos. 66, 67. Unsatisfied, Sayward filed a renewed motion. Doc. No. 69. For the reasons below, the Court finds as moot the first motion for bill of particulars and denies the motion to dismiss, the motion for an evidentiary hearing, and the renewed motion for bill of particulars.

**I.   BACKGROUND**

A superseding indictment charges Sayward with interstate communications with a threat to kidnap or injure in violation of 18 U.S.C. § 875(c).[1] Doc. No. 43. More specifically, the superseding indictment states:

On or about May 14, 2022, in the District of North Dakota,

---

[1] Sayward was initially indicted on June 16, 2022 (Doc. No. 16), and the grand jury returned the superseding indictment on October 5, 2022. Doc. No. 43.

THOMAS WILLIAM WALKER SAYWARD

did knowingly transmit in interstate and foreign commerce, a communication containing language the defendant knew to be a threat, and knowing that the communication would be viewed as a threat to injure the person or persons of another, in that defendant sent a communication, via Qualtrics, an internet based electronic operating system that North Dakota State University utilizes to send and analyze surveys, to North Dakota State University, and stated in part:

> I'm still waiting for resolution the current ombudsperson is NOT tolerant and is NOT inclusive, she is hell bent on creating an intolerant and non-inclusive learning environment…The Current Ombuds person is a tyrant…The criminals employed at NDSU shall either be going to prison or i shall be exercising my 2nd amendment rights in defense of my 1st and 14th amendment rights against select criminal tyrants currently employed at NDSU…HEY NDSU DO I HAVE YOUR ATTENTION YET!!! The only good tyrant is a dead tyrant and if the federal DOJ is not going to deliver justice then it is well within my rights to employ the 2nd amendment against these tyrants at NDSU to reclaim and defend my (and others) self evident inalienable constitutionally protected 1st and 14th amendment rights…

In violation of Title 18, United States Code, Section 875(c).

Id. Per the bill of particulars, the individuals and group of individuals purportedly threatened by the listed communication are "North Dakota State University Ombudsperson Kristine Paranica" and "select criminal tyrants currently employed at NDSU." Doc. No. 66.

In his motion to dismiss, Sayward argues the superseding indictment must be dismissed because the charged communication is not a "true threat" and is thus protected by the First Amendment. Additionally (and to some extent alternatively), he also moves for a bill of particulars that identifies with more specificity the "select criminal tyrants currently employed at NDSU." Doc. No. 69.

## II.  LAW AND ANALYSIS

### A.  Standard for a Motion to Dismiss Indictment

Turning first to the motion to dismiss, motions to dismiss are governed by Rule 12 of the Federal Rules of Criminal Procedure. Rule 12(b)(1) states, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine <u>without a trial on the merits</u>." Fed. R. Crim. P. 12(b)(1) (emphasis added). "A motion is capable of pretrial determination 'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity' of the motion." <u>United States v. Turner</u>, 842 F.3d 602, 604 (8th Cir. 2016) (quoting <u>United States v. Covington</u>, 395 U.S. 57, 60 (1969)).  A court "must decide every pretrial motion before trial unless it finds good cause to defer a ruling" and "must not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal." Fed. R. Crim. P. 12(d).  "Courts may not . . . make factual findings when an issue is 'inevitably bound up with evidence about the alleged offense itself.'" <u>Turner</u>, 842 F.3d at 605 (quoting <u>United States v. Grimmett</u>, 150 F.3d 958, 962 (8th Cir. 1998)).

"An indictment survives a motion to dismiss for failure to state an offense if 'the indictment contains a facially sufficient allegation.'" <u>United States v. Sholley-Gonzalez</u>, 996 F.3d 887, 893 (8th Cir. 2021), <u>cert. denied,</u> 142 S. Ct. 817 (2022) (quoting <u>United States v. Ferro</u>, 252 F.3d 964, 968 (8th Cir. 2001)). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." <u>United States v. Steffen</u>, 687 F.3d 1104, 1109 (8th Cir. 2012) (citing <u>United States v. Fleming</u>, 8 F.3d 1264, 1265 (8th Cir.1993)). "'In reviewing the sufficiency of an indictment, [the Court] accept[s] the government's allegations as true, without reference to

3

allegations outside the indicting document[,]'" Id. at 1107 (quoting United States v. Farm & Home Sav. Ass'n, 932 F.2d 1256, 1259 n.3 (8th Cir.1991)), and does not consider the sufficiency of the evidence. See Ferro, 252 F.3d at 968 (quoting United States v. DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000)).

    **B.**  **Discussion and Analysis**

As noted above, Sayward is charged in the superseding indictment with violating 18 U.S.C. § 875(c).  To start, he does not dispute that the superseding indictment "contains all of the essential elements of the offense charged," "fairly informs [him] of the charges against which he must defend," or "alleges sufficient information to allow [him] to plead a conviction or acquittal as a bar to a subsequent prosecution." Steffen, 687 F.3d at 1109. So, on its face, the superseding indictment contains the essential elements of the § 875(c) violation and informs Sayward of the charge he must defend.

Instead, Sayward's challenge to the superseding indictment is on more nuanced grounds—he asserts the charged communication is not a "true threat" and is therefore protected under the First Amendment of the United States Constitution. Doc. No. 55. The United States disagrees, asserting the communication is a true threat and is not protected by the First Amendment.

    **i.**  **True Threats and the First Amendment**

The First Amendment states, in part, "Congress shall make no law . . . abridging the freedom of speech, or of the press[.]" U.S. Const. amend. I. "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." Virginia v. Black, 538 U.S. 343, 358 (2003) (internal citations omitted). Even so, the free-speech protections of First Amendment are not absolute. Id. ("The protections afforded by the First Amendment, however, are not absolute, and we have long

recognized that the government may regulate certain categories of expression consistent with the Constitution."); United States v. Carrier, 672 F.2d 300, 305 (2d Cir. 1982) (explaining "the First Amendment was not intended to give immunity for every possible use of language"). And one category of speech that does not enjoy First Amendment protection is speech that qualifies as a "true threat." United States v. Bellrichard, 994 F.2d 1318, 1322 (8th Cir. 1993); Black, 538 U.S. at 359; Watts v. United States, 394 U.S. 705, 708 (1969).

"'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Black, 538 U.S. at 359 (internal citations omitted). "The speaker need not actually intend to carry out the threat." Id. at 359-60. As explained by the Supreme Court:

> Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." Ibid. Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

Id. at 360.

"Courts dismiss indictments under the First Amendment before trial only in the clearest of cases—typically, where no factfinder could conclude that the statement constitutes a true threat of future harm." United States v. Hussaini, No. 19-60387-CR, 2022 WL 138474, at *5 (S.D. Fla. Jan. 14, 2022) (citing United States v. Landham, 251 F.3d 1072, 1082 (6th Cir. 2001)) (emphasis omitted). Indeed, "most courts agree that, 'in the usual case, whether a communication constitutes a threat or a true threat is a matter to be decided by the trier of fact.'" Id. (collecting cases); United States v. Bippert, No. 21-03037-01-CR-S-MDH, 2022 WL 625083, at *2 (W.D. Mo. Mar. 3, 2022) (explaining "'absent an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury.'" (quoting United States v. Stevens, 881 F.3d 1249, 1252

(10th Cir. 2018)); Carrier, 672 F.2d at 306 (explaining that "whether words used are a true threat is generally best left to the triers of fact"). This is because "most cases are within a broad expanse of varying fact patterns which may not be resolved as a matter of law, but should be left to a jury." Carrier, 672 F.2d at 306 (denying a motion to dismiss an indictment charging a violation of 18 U.S.C. § 871(a)).

This motion presents a unique blend of legal standards and questions—on the one hand is Federal Rule of Criminal Procedure 12 and the standards that apply to the motion to dismiss, which generally limits the analysis to the charging documents. On the other hand, whether certain speech is protected by the First Amendment is typically a judicial determination. But as to the predicate question of whether a communication constitutes a "true threat" (a special subset of unprotected speech) the case law is quite clear that is a fact question to be decided by the trier of fact.

In support of his position that the charged communication is not a true threat, Sayward relies heavily on Baker, where a federal district court dismissed an indictment before trial on First Amendment grounds. Doc. No. 55, pp. 14-18. Critically though, Baker is a well-recognized outlier in federal case law. See Hussaini, 2022 WL 138474, at *5 ("So far as we're aware, in fact, only one federal judge has ever dismissed an indictment before trial on the argument Hussaini advances here—that, while the charged statements are disturbing and plainly threatening, they do not constitute 'true threats' because their target audience was too inchoate and undefined." (citing United States v. Baker, 890 F. Supp. 1375 (E.D. Mich. 1995)); United States v. Dennison, No. 2:21-CR-00149-JDL-1, 2022 WL 834437, at *2 (D. Me. Mar. 21, 2022) ("Further, Baker is an outlier, representing the only case identified by [the defendant] in which a federal court has dismissed an indictment prior to trial under the argument advanced by [a defendant that the threat lacked specificity as to the target and location of the threatened conduct]. Baker thus offers little

guidance as to the level of specificity required for a true threat."). As a result, this Court is unwilling to follow its analysis and conclusions as to "true threats" under the First Amendment.[2] Far more persuasive are the numerous decisions recognizing that "in the usual case, whether a communication constitutes a threat or a true threat is a matter to be decided by the trier of fact." Hussaini, 2022 WL 138474, at *5 (collecting cases) (internal quotations omitted); Bippert, 2022 WL 625083, at *2 (quoting Stevens, 881 F.3d at 1252); Carrier, 672 F.2d at 306.

Here, reaching the conclusion Sayward seeks, i.e., that the charged communication is protected by the First Amendment, requires the Court to first answer the highly fact-intensive question of whether the communication is a "true threat." Sayward readily acknowledges this, by asking the Court to hold an evidentiary hearing on the motion to further develop the factual record on the issue.[3] But even setting aside Federal Rule of Criminal Procedure 12 for the moment, the threshold question of whether a communication constitutes a "true threat" is a question that is routinely left to the jury, not the Court, to answer. Hussaini, 2022 WL 138474, at *5 (collecting cases); Bippert, 2022 WL 625083, at *2 (quoting Stevens, 881 F.3d at 1252); Carrier, 672 F.2d at 306. If a jury determines, as a matter of fact, that a communication is not a true threat, then the Court may make the judicial determination that the communication is protected by the First Amendment, and vice versa. But on these facts, the Court is unwilling to step in on a motion to dismiss and determine, as a matter of fact, whether the communication is a "true threat." Moreover, given the number of fact issues and fact disputes raised in the parties' filings on this

---

[2] Baker is also factually distinguishable for several reasons, and interestingly, on appeal, the Sixth Circuit Court of Appeals took care to note it was not affirming the decision on the First Amendment grounds. United States v. Alkhabaz, 104 F.3d 1492, 1493 (6th Cir. 1997).

[3] The United States opposes an evidentiary hearing, though it also relies heavily on facts outside of the charging documents in its briefing in opposition to Sayward's motion.

issue, this is certainly not a case "where no factfinder could conclude that the statement constitutes a true threat of future harm." Hussaini, 2022 WL 138474, at *5 (citing Landham, 251 F.3d at 1082) (emphasis omitted). The trier of fact must decide whether the charge communication attributed to Sayward is a true threat or not, and as a result, the motion to dismiss is denied, along with the related motion for an evidentiary hearing.

### C.  Bill of Particulars

With the motion to dismiss resolved, the final issue is Sayward's motion and then renewed motion for a bill of particulars. Federal Rule of Criminal Procedure 7(f) allows a defendant to move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). A bill of particulars must inform the defendant of the nature of the charge against him with sufficient precision to enable the defendant to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable the defendant to plead acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite. United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir. 2002). The trial court has broad discretion to grant or deny a motion for a bill of particulars. United States v. Stephenson, 924 F.2d 753, 762 (8th Cir. 1991). Importantly, a bill of particulars may not be used as a discovery tool, nor may it be used to obtain a detailed disclosure of the Government's evidence and theories. United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993).

As noted above, it is well-established that an indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, if it fairly informs the defendant of the charges against which he must defend, and if it alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. Wessels, 12 F.3d at 750. An indictment need only inform a defendant of the charges against him in order to allow

him to understand the nature of those charges, prepare a defense, and avoid unfair surprise at trial. See id.

Sayward's first motion for bill of particulars (Doc. No. 54) is now moot, considering the United States' voluntary filing of a bill of particulars. Doc. Nos. 66, 67. As to his renewed motion (Doc. No. 69), the superseding indictment tracks the elements of the offense charged, and there is no doubt that the superseding indictment, along with the record, will be sufficient to protect Sayward from the risk of double jeopardy. And recall that the United States did identify one individual in its bill of particulars. So, the remaining question is whether the group of individuals identified in the bill of particulars, "'select criminal tyrants currently employed at NDSU[,]" is sufficiently definite. Doc. Nos. 66, 69.

On that issue, two cases are instructive. First, in Dennison, 2022 WL 834437, at *2, Dennison threatened "Jews" and argued that group was too numerous to comprise a sufficiently specific group to be the target of a true threat. Id. The court concluded that the question of whether the group was too numerous to comprise a specific group relates to the sufficiency of the evidence—and not the sufficiency of the indictment—and must be resolved by the trier of fact. Id. Specifically, the court stated, "That 'Jews' as a group is comprised of several million individuals across the globe goes to the jury's ultimate determination of whether Dennison possessed the requisite intent to communicate a threat." Id. Second, in United States v. Carrillo, No. 1:19-CR-01991 KWR, 2020 WL 1703332, at *2 (D.N.M. Apr. 8, 2020), the court found that an indictment and discovery were "otherwise clear that [the defendant] is alleged to have threatened ACLU employees in the State of New Mexico" and denied the defendant's motion for a bill of particulars.

Analogizing to those cases, the group at issue here, "select criminal tyrants currently employed by NDSU," is sufficiently definite to put Sayward on notice and allow him to prepare a

9

defense. Steffen, 687 F.3d at 1109. That "select criminal tyrants employed by NDSU" encompasses a group of people merely goes to the jury's ultimate determination of whether Sayward possessed the requisite intent to communicate a threat. See Dennison, 2022 WL 834437, at *2. Additionally, Sayward's arguments relate to the sufficiency of the evidence, rather than the sufficiency of the indictment, and must be resolved by the trier of fact. Put simply, the individual and group of individuals listed in the bill of particulars, when read in conjunction with the superseding indictment and available discovery,[4] are sufficiently definite to inform Sayward of the charges against him and allow him to prepare a defense. See Carrillo, 2020 WL 1703332, at *2.

## III.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, the Court **DENIES** Sayward's motion to dismiss (Doc. No. 55), **DENIES** the motion for an evidentiary hearing (Doc. No. 56), **FINDS AS MOOT** Sayward's motion for bill of particulars (Doc. No. 54), and **DENIES** his renewed motion for bill of particulars (Doc. No. 69).

**IT IS SO ORDERED**.

Dated this 22nd day of December, 2022.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court

---

[4] Though not highlighted by the parties, there has been discovery exchanged between the parties—as evidenced by their filings in the record.